FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

99 FEB 12 AM 11: 22

U.S. DISTRICT COURT
N.D. OF ALABAMA

STEPHEN EDDLEMAN,                    )
                                     )
        Plaintiff,                   )
                                     )
v.                                   )
                                     )   CIVIL ACTION NO:
UNITED PARCEL SERVICE, INC.,         )
                                     )   96-P-0105-S
        Defendant.                   )

ENTERED

FEB 1 2 1999

## MEMORANDUM OPINION

The plaintiff, Stephen Eddleman ("Eddleman"), brings this action claiming that UPS failed to provide him with reasonable accommodations while performing his job and discriminated against him on the basis of his alleged disability in violation of the American with Disabilities Act ("ADA"). Eddleman also claims that UPS violated Alabama's Right to Work Statute, Ala. Code § 25-7-30.

Before the court is the defendant's Motion for Summary Judgment, filed on October 30, 1997. The motion was taken under submission as of February 5, 1998. After careful consideration of the briefs and evidentiary materials submitted, the court finds that the defendant's motion is due to GRANTED and the action will be dismissed with prejudice.

### Facts

Eddleman has been employed by UPS since March 27, 1978 and has been a package car driver and "cover" tractor trailer driver since June 30, 1981. On April 26, 1993, Eddleman suffered a back injury while on the job and sought the medical help of his physician, Dr. Robert Sparks, who

temporarily restricted him from performing his package car job at UPS. After June of 1993, Eddleman was treated by several physicians including Dr. Frank Haws, a neurosurgeon, who diagnosed a ruptured at L2-3 in October of 1993. Dr. Haws performed a laminectomy to remove the herniated portion of the disc on October 18, 1993. Dr. Haws considered the surgery successful and found no further impingement on the nerve root subsequent to the surgery. Dr. Haws determined that Eddleman reached maximum medical improvement on March 14, 1994.

Under Dr. Haws' instructions, Eddleman underwent a physical capacity evaluation at Cullman Medical Center in April of 1994. That evaluation determined that he could perform basic moving activities with no problem, walk a mile in 14 minutes, and climb 47 stairs in 3 minutes with no pain. Moreover, Eddleman's maximum lift capability was 100 pounds; he could carry 70 pounds and could pull up to 145 pounds. The evaluation also concluded that Eddleman was able return to his former job without restriction. Accordingly, Dr. Haws released Eddleman to work without restrictions on May 4, 1994. Eddleman returned to work that same day, returning directly to his former positions of package car driver and cover feeder and has worked full-time in that position since then.

On May 4, 1994, his first day back to work, Eddleman requested that UPS provide him a truck with a 14 inch step, as opposed to the standard 18 inch step truck. In addition, Eddleman requested that UPS provide him with a restroom on the first floor of the Hartselle Center,[1] that he be provided a helper to deliver packages on his backup feeder run, and that he be relieved of his responsibilities as a cover feeder driver. The management discussed the proposals with Eddleman, but UPS denied these requests on the basis that they were not reasonable accommodations.

A year later, May 1995, Eddleman returned to Dr. Haws complaining again of muscle

---

[1] The men's restroom at the Hartselle Center is located on the second floor.

2

weakness and left leg discomfort. Dr. Haws found no objective medical evidence to explain or verify Eddleman's complaints and did not diagnose muscle weakness or atrophy.

Eddleman was evaluated by Eric Beck, M.D., Ph.D. on March 8, 1996, in connection with his worker's compensation lawsuit against UPS. Dr. Beck concluded that Eddleman was 10 percent disabled, such that he can now "play only 9 holes of golf instead of 18." Eddleman has testified that he goes hunting every time he can sneak out of the house.

On February 24, 1997, Eddleman was examined by Dr. Brad Ward, who found Eddleman's motor and sensory exam to be normal.

On March 26, 1997, Eddleman was diagnosed with carpal tunnel syndrome. Eddleman explained that he experiences numbness and pain in his right wrist, however, he is not medically restricted from performing any activity due to the alleged problems with his wrist.

Eddleman filed his complaint in April of 1996, alleging he has been discriminated against because of his alleged disability in that defendant has denied Eddleman reasonable accommodations on several occasions in violation of the "Americans With Disabilities Act."[2]

## Analysis

### I. ADA Discrimination

Evidence of intentional discrimination under the Americans with Disabilities Act can be shown

---

[2]Specifically, the claim is that defendant has failed or refused to provide Eddleman with the reasonable accommodation of a new lower truck with a fourteen (14) inch bottom step instead of the eighteen (18) inch step on the older trucks. Eddleman claims this accommodation was necessary because of his difficulty getting in and out of the truck because of his back injury. Further, Eddleman claims that his request for a men's restroom on the first floor is reasonable because he cannot get to the only men's restroom currently available, which is on the second floor.

in two ways. First, a plaintiff can present direct evidence of discrimination, such as a decisionmaker's discriminatory remarks made in the context of an employment decision. However, "only the most blatant remarks, whose intent could be nothing other than to discriminate....constitute evidence of discrimination."Carter v. City of Miami, 870 F.2d 578, 582 (11ᵗʰ Cir. 1989). In the present case, Plaintiff has no direct evidence of intentional discrimination.

Second, a plaintiff can present circumstantial evidence that the defendant intentionally discriminated against him because of his disability. The Supreme Court has developed a three-step formula for shifting evidentiary burdens between plaintiff and defendant which permits the establishment of intentional discrimination without direct evidence of unlawful motivation. A.C. Modjeska, *Employment Discrimination Law* § 1:09, at 39-40 (3d ed. 1996). The order and allocation of burdens of proof, persuasion, and production were first defined in McDonnell Douglas Corp. v Green, 411 U.S. 792, (1973), then elaborated in Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53, (1981), and finally clarified in St. Mary's Honor Center v. Hicks, 509 U.S. 502, (1993).[3]

The first step requires plaintiff to establish a prima facie case of discrimination by demonstrating: (1) that he has a disability; (2) that he is a "qualified individual" (i.e., that he can perform the essential functions of the job position he holds or seeks, with or without reasonable

---

[3]It is widely agreed that the burden-shifting analysis expressed in McDonnell Douglas and its progeny, and applied in Title VII disparate treatment cases, is similarly followed in deciding cases brought under the ADA. See McNemar v. The Disney Store, Inc., 91 F.3d 610, 619 (3d Cir. 1996), cert. denied, __ U.S. __, 117 S. Ct. 958 (1997), see also Moses v. American Nonwovens, Inc., 97 F.3d 446, 447 (11ᵗʰ Cir. 1996), cert. denied, __ U.S. __, 117 S. Ct. 964 (1997) (implicitly using burden-shifting framework).

4

accommodation being made by the employer[4]); and, (3) that he was discriminated against because of his disability. See 42 U.S.C. § 12132; Pritchard v. Southern Company Services, 92 F.3d 1130, 1132 (11th Cir. 1996). In addition, a plaintiff must show that the employer had actual or constructive knowledge of his disability. Gordon v. E.L. Hamm & Associates, Inc., 100 F.3d 907, 910 (11th Cir. 1996).

In the second step of analysis, the burden of production shifts to defendant to rebut the presumption of intentional discrimination raised by a prima facie case, by setting forth legitimate, nondiscriminatory reasons for the contested employment action   Burdine, 450 U.S. at 253. Assuming the defendant does so, then the final step of the inquiry plaintiff must show by a preponderance of the evidence that defendant's stated reasons are mere pretexts for unlawful, discriminatory motives. Burdine, 450 U.S. at 253.


A.     The Prima Facie Case - Is Plaintiff "Disabled"?

The ADA defines the concept of "disability" in a manner that includes any individual:

> (a)     who has a *physical or mental impairment* that *substantially limits* one or more of the *major life activities* of such individual, or
>
> (b)     who has a *record* of such an impairment, or
>
> (c)     who is *regarded as having* such an impairment.

See 42 U.S.C. § 12102 (2).

---

[4]42 U.S.C. § 12111(8) (defining "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodations, can perform the essential functions of the employment position that such individual holds or desires").

5

(1)    Is plaintiff "substantially limited" in a "major life activity"?

When applying the definition in (a), three questions must be asked: (1) is the condition an

*"impairment"*?; (2) does the *impairment "substantially limit"* a major life activity?; and (3) what

qualifies as a *"major life activity?"* While plaintiff's alleged pain in his back, leg, and wrist might

constitute an impairment, "a physical impairment, standing alone, is not necessarily a disability as

contemplated by the ADA...The ADA requires that the impairment *substantially limit* one or more

of the individual's *major life activities*." Gordon, 100 F.3d at 911.  The ADA does not define

"substantial limitation" nor "major life activity"; nevertheless, "courts may rely upon the regulations

promulgated by the Equal Employment Opportunity Commission.....for guidance " Gordon, 100 F.3d

at 911.  EEOC regulations have adopted the definitions of "substantial limitation" and "major life

activity" as contained in the Rehabilitation Act. Dutcher v. Ingalls Shipping, 53 F.3d 723, 726 (5th Cir.

1995); Bolton v. Scrivner, Inc., 36 F.3d 939 (10th Cir. 1994), cert. denied, 115 S. Ct. 1104 (1995).

The regulations define "major life activity" as "functions such as caring for oneself, performing

manual tasks, walking, see, hearing, speaking, breathing, learning, and working." 29 C.F.R. §

1630.2(j)(1).  "Substantial limitation" is defined as an inability to perform, or a significant restriction

in the condition, manner or duration under which an individual can perform a particular major life

activity as compared to the average person in the general population. 29 C.F.R. § 1630.2(j)(1).

In the present case, plaintiff cannot claim he is substantially limited in his ability to work, as

he has worked without interruption since he was released to work on May 4, 1994. Penny v. United

Parcel Service, 1997 WL 651470, *6 (6th Cir. 1997) (holding plaintiff not limited in his ability to

work where "he is working now as a UPS package car driver"). The Eleventh Circuit has explained

that "when individuals claim that they are substantially limited in the major life activity of 'working,'

6

their condition 'must significantly restrict [their] ability to perform either class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training skills and abilities." Pritchard, 92 F.3d at 1132 amended on reh'g, 102 F 3d 1118 (11th Cir. 1996)  The plaintiff cannot establish he is restricted in his own job at UPS, much less a class or broad range of jobs as compared to the average person in the general population.  Indeed, plaintiff has performed the jobs of package car driver, feeder driver, splitter, and unloader since May 1994.

The plaintiff is not substantially limited in other major life activities.  He has had no medical restrictions since returning to work in May 1994.  Dr. Frank Haws testified that there is no objective medical evidence to substantiate the plaintiff's reported "pain."  Plaintiff can walk a mile in 14 minutes, lift up to 100 pounds, pull up to 145 pounds, carry 70 pounds and climb 47 stairs in 3 minutes.

Plaintiff may in fact have a 10% permanent impairment rating; however, such evidence does not rise to the level of substantially limiting a major life activity.  Courts have held that summary judgment is appropriate on the basis that the plaintiff is not disabled in cases where the plaintiffs had greater impairment ratings than ten percent.  See Penny, 1997 *6 (holding plaintiff not disabled where he had a total body impairment of 20%); Rogers v. Int'l Marine Terminals, Inc., 87 F.3d 755, 759 (5th Cir. 1996)  ("the mere existence of 13% permanent, partial disability does not demonstrate that plaintiff has been substantially impaired from performing a major life activity"), Stone v. Entergy Services, Inc., 1995 WL 368473 (E.D. La. 1995) (holding plaintiff not disabled when he had a body impairment of 15%).  The court finds that plaintiff fails to show that he has a physical or mental impairment that substantially limits one or more of his major life activities.

### (2)   Does the plaintiff have a record of such an impairment?

Even so, plaintiff may still be considered "disabled" if he "has a record" of an impairment

which substantially limits a major life activity. 42 U.S.C. § 12102 (2) (B). The plaintiff here asserts

that Deborah Goza, the Alabama District Occupational Health Supervisor for UPS and the person

who completes the "Reasonable Accommodation Checklist" for UPS's worker's compensation cases,

received medical reports which clarify Eddleman's record of impairment. Additionally, plaintiff

asserts that UPS settled the plaintiff's worker's compensation claim, leaving future medical payments

open to be paid, which shows UPS clearly knew the impairment was permanent.

Although the ADA does not define "record of impairment," the interpretative guidance of

EEOC regulations provide:

> (k)   Has a record of such impairment means has a history of, or has
> been misclassified as having, a mental or physical impairment that
> substantially limits one or more major life activities.

29 C.F.R. § 1630.2 (k) (1996). Plaintiff cannot make such a showing. Plaintiff's leave of absence

was temporary, and the fact that he was temporarily unable to work at UPS does not amount to a

record of impairment for ADA purposes. Prior back surgery and medical leave of absence do not

constitute a record of impairment that substantially limits a major life activity. Thus, plaintiff cannot

be considered to have a record of an impairment which substantially limits a major life activity.

### (3)   Was plaintiff "regarded as" disabled?

Even if an individual cannot satisfy either the first part of the ADA's definition of "disability,

or the second, "record of" portion, he still may be able to satisfy the third prong of the definition,

providing that a person who is "regarded" by an employer "as having such an impairment" – i.e., one

8

that substantially limits a major life activity – is an individual with a disability. 42 U S.C. § 12102

(2)(C). The Center Manager of UPS's Hartselle Center, Craig Williamson, testified that he "did not

believe that Steve [Eddleman] was disabled...because he was released back to work without

restrictions.  And to [Williamson's] knowledge, he wasn't said to be disabled by any doctor."

Plaintiff argues that UPS regards him as "having such an impairment" because they recognized his

inability to climb stairs to the locker/restroom by giving him permission to dress in his uniform at

home and allowing him to use the ladies' restroom on the first floor of the Hartselle Center.  UPS

allowed plaintiff to return to work upon release from his doctor in May of 1994, and plaintiff

continued to perform the same jobs of package car driver and cover feeder without restrictions since

that date. The court finds that allowing plaintiff to dress at home and use the ladies' restroom on the

first floor is not sufficient evidence to indicate that UPS regards the plaintiff as disabled.  Irrespective

of the minor accommodations aforementioned, the court finds that UPS has never taken any action

indicating that it regarded Eddleman as having an impairment that significantly restricted a major life

function.

As plaintiff is not "disabled" under any definition set forth in the ADA, he does not fall within

its protection.  Accordingly, plaintiff has not demonstrated a prima facie case of discrimination, and

summary judgment is due to be GRANTED in favor of the defendant on the discrimination claim.


II.  Hostile Environment Under the ADA

Plaintiff alleges that his supervisor's comments and actions created a hostile environment

under the ADA.[5]  "In order to be actionable on a hostile environment theory, disability-based harassment, like sexual harassment, would presumably have to "be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment." McConathy v Dr. Pepper/Seven Up, 131 F.3d 558, 563 (5th Cir. 1998).  The court finds that plaintiff's allegations simply do not rise to the level of actionable harassment, and the defendant's motion for summary judgment is therefore due to be GRANTED.

III.  Alabama's Right to Work Statute Violation

The court finds that plaintiff cannot establish a violation of Alabama's Right to Work statute, Ala. Code §25-7-30, as this statute is inapplicable to the facts of this case.  Thus, the defendant's motion for summary judgment is due to be GRANTED.

Conclusion

No genuine issues of material fact exist with regard to any claims in this case.  Therefore, this court concludes that defendant is entitled to summary judgment on all claims.  An order consistent with this memorandum opinion will be entered contemporaneously herewith.

Dated:_____Febr___/2___, 1999.

_____
Chief Judge Sam C. Pointer, Jr

---

[5]The Eleventh circuit never has specifically recognized a claim for disability based harassment.

10

Service List:
        Kelly H. Estes
        John J. Coleman, Jr.
        F. Keith Covington
        Richard A. Meelheim
        James P. Rea

11